UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GLORIA S. SPARVERI,<br>    Plaintiff | : <br> : <br> : | |
| v. | : <br> : | CIVIL ACTION NO.<br>3:05-cv-376 (JCH) |
| TOWN OF ROCKY HILL,<br>    Defendant. | : <br> : | OCTOBER 18, 2005 |

**RULING ON DEFENDANT'S
MOTION TO DISMISS [DKT. NO. 9]**

**I. INTRODUCTION**

The defendant, the Town of Rocky Hill (the "Town"), moves under Fed. R. Civ. P. 12(b)(6) to dismiss Count I of plaintiff Gloria Sparveri's two-count complaint. Ms. Sparveri originally brought this case in state court, but it was removed to federal court pursuant to 28 U.S.C. §§ 1331 and 1343. Count I of Ms. Sparveri's complaint alleges a violation of 42 U.S.C. § 1983. Ms. Sparveri alleges that the Town, acting under color of law, violated her federal Fourteenth Amendment right not to be deprived of property without due process of law by arbitrarily reversing a decision that the Town's chief executive and pension plan administrator had made to adjust retroactively Ms. Sparveri's hire date to account for part-time service. The Town argues in its motion to dismiss that Ms. Sparveri did not have a constitutionally protected property interest in her entitlement to the increased pension rights associated with the earlier hire date.

**II. STANDARD OF REVIEW**

A Rule 12(b)(6) motion to dismiss tests only the adequacy of the complaint. United States v. City of New York, 359 F.3d 83, 87 (2d Cir. 2004). Thus, such a motion

can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  A Rule 12(b)(6) motion cannot be granted simply because recovery appears remote or unlikely on the face of a complaint.  Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Id. (quotation omitted).  "[W]hile bald assertions and conclusions of law will not suffice to state a claim, the district court, before granting a motion to dismiss, must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Tarshis v. Riese Org., 211 F.3d 30 (2d Cir. 2000) (internal citations omitted); see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

## III.  FACTS

The court accepts the following facts, taken from the complaint, as true for the purposes of the present motion:

The Town has a pension plan (the "Plan") for its regular employees.  The Town Council created the Plan under authority of section 905 of the Town Charter, which states that the "Council may provide by ordinance a system of retirement allowances for the Town's regular, full time, paid employees and for contributions by employees and the Town to a fund from which such allowances shall be paid."  The resulting Town ordinance names the Town Manager as the administrator and trustee of the Plan. Section 502 of the Town Charter vests the Town Manager with the powers and duties

that the Connecticut General Statutes confer upon towns' chief executive officers. Under state law, the Town Manager's duties include "superintend[ing] the concerns of the town, adjust[ing] and settl[ing] all claims against it and draw[ing] orders on the treasurer for their payment." Conn. Gen. Stat. § 7-12; see id. § 7-99.

A Town employee "fully vests" in the Plan after five years of credited service. Monthly benefits increase with each additional year of credited service, up to a maximum of thirty years. (Compl. ¶ 9 [Dkt. # 1]). Town Personnel Rules also provide for health insurance benefits upon retirement for employees who have served for at least ten years and who retire at age fifty-five or older. Eligible retirees may receive health insurance benefits until age sixty-five.

Ms. Sparveri worked for the Town in a number of different capacities: as a volunteer (1988-1993); a part-time independent contractor (1993-1996); a full-time independent contractor (1996-1997); and finally a full-time regular employee (1997-July 2003). Initially, the Town considered her hire date for pension purposes as being 1997, when she became a full-time regular employee. In September 2000, however, Town Manager Nicholas A. LaRosa approved a written recommendation by Assistant Town Manager Barbara Gilbert that Ms. Sparveri's hire date should be changed to an earlier date in order to give her credit for service as a part-time employee. The Town changed Ms. Sparveri's hire date to May 1, 1991, so as to give her credit for approximately one-half of the time that she served the Town as a volunteer and independent contractor. Ms. Gilbert noted in her memorandum to Mr. LaRosa that "[t]his benefit has been given to other employees who started working for the Town on a part time basis until they could secure a full time position." (Compl. ¶ 11 [Dkt. # 1]). She also emphasized that

3

the adjustment of the hire date would impact Ms. Sparveri's vacation, longevity, and retirement dates. Indeed, after Mr. LaRosa's approval of the memorandum, Ms. Sparveri began receiving benefits as if she had started her full time employment with the Town on the new hire date.  These included longevity checks, which are paid only to employees with at least five years of service and a lower group medical insurance co-pay, available only to employees hired before July 1, 1995.

Ms. Sparveri resigned in July 2003.  In March 2004, when she requested from the defendant an estimate of the benefits she would receive under the Plan, this estimate "was erroneously calculated using a 1997 hire date." (Compl. ¶ 17 [Dkt. # 1]). In summer 2004, the Town informed Ms. Sparveri that it would not recognize the earlier hire date for the purposes of calculating her pension and other retirement benefits, but rather would use the date on which she had become a full-time employee.  The defendant has refused to change this position.  Ms. Sparveri's "pension rights are among her most valuable pieces of property," and she had expected to receive them upon retirement.  (Compl. ¶ 20 [Dkt. # 1]).

## IV.  DISCUSSION

To make out a cause of action under 42 U.S.C. § 1983, a plaintiff must establish that the defendant, acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory," caused her to be deprived of "any of the rights, privileges, or immunities secured by the [United States] Constitution and Laws." Id.  The defendant argues that the complaint fails to plead this cause of action because it does not allege facts sufficient to support the claimed constitutional violation:  deprivation of property without due process of law, in violation of the Fourteenth Amendment to the

United States Constitution. The Town argues that Ms. Sparveri has not pleaded facts sufficient to establish a property interest in receiving those pension benefits that the Town has denied her.[1]  "The Plaintiff has not pleaded that her entitlement to the pension benefits is governed by express provisions of regulations and statutes providing such seniority pension benefits."  (Def.'s Mem. Supp. Mot. Dismiss 8 [Dkt. # 9-2]).

In determining whether Ms. Sparveri has a constitutionally protected property right in receiving pension and retirement benefits commensurate with the earlier hire date, the court must look at the source of the claimed entitlement.

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.  It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. . . .
>
> Property interests . . . are not created by the [federal] Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law–rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).

The Second Circuit has recently held that

[i]n determining whether a given benefits regime creates a property interest protected by the Due Process Clause, we look to the statutes and regulations governing the distribution of benefits.  Where those statutes or

---

[1] The court further notes that the complaint does not allege that the Town denied any particular process to Ms. Sparveri – even though Count I alleges that Ms. Sparveri was deprived of property without due process of law.  The court need not address this issue, however, in light of the conclusion below.

>regulations meaningfully channel official discretion by mandating a defined administrative outcome, a property interest will be found to exist.

Kapps v. Wing, 404 F.3d 105, 113 (2d Cir. 2005) (internal citations and quotation marks omitted).  The Second Circuit held that a federal statute that created a home energy assistance block grant program and afforded states broad discretion in deciding whether and how to implement the program did not, by itself, give rise to a property interest.  Id.  However, the state statute that implemented the federal program did create a property interest.  "Like other statutory frameworks we have found to create property interests, [the state law] sets fixed eligibility criteria for the receipt of [ ] benefits [thereunder]."  Id. at 114 (citing Basciano v. Herkeimer, 605 F.2d 605 (2d Cir. 1978) (holding that city administrative code created a property right in receipt of accident disability retirement benefits, where the code required officials to give benefits to applicants who met specified criteria)) (other internal citations omitted); see also Winston v. City of New York, 759 F.2d 242 (2d Cir. 1985) (holding that tenured New York public school teachers had a property interest in contractual pension benefits, but only because these benefits were grounded in the New York State Constitution and they vested in the plaintiffs by the terms of a statutory scheme); Sanchez v. City of Hartford, 10 F.Supp.2d 162 (D. Conn. 1998) (holding that a deferred compensation plan participant who was denied early withdrawal would have a protected property interest if the denial violated federal statutory provision).  The statute in Kapps also set non-discretionary criteria for the amount of benefits to be awarded to each successful applicant.  Id.  In contrast to the cases discussed above, the Second Circuit has held that state law provisions that required contractors to hold payments for performance of

public improvement contracts in trust for the benefit of subcontractors and suppliers did not give a contractor a right to prompt payment on a public contract.  S & D Maintenance Co. v. Goldin, 844 F.2d 962, 969 (2d Cir. 1988).

Ms. Sparveri argues that her entitlement to the level of pension and healthcare benefits commensurate with the earlier hire date is rooted in the statutory pension scheme established by the Town Charter and Plan ordinance.  Section 906 of the Town Charter permits the Town Council to "provide by ordinance a system of retirement allowances for the Town's regular, full time, paid employees and for contributions by employees and the Town to a fund from which such allowances shall be paid."  The ordinance cited in the Complaint was passed pursuant to this law and names the Town Manager as the pension plan administrator and trustee.  Sections 501-502 of the Town Charter and Connecticut General Statutes §§ 7-99 and 7-12 list general duties of the Town Manager.  The entitlement at issue in the present case consists of those pension benefits that Ms. Sparveri would receive under the Pension Plan if her hire date was May 1, 1991, minus the pension benefits that she continues to receive based on the 1997 hire date.  Neither the Town Charter, nor the Town ordinances, nor the state statute cited above "meaningfully channel official discretion by mandating a defined administrative outcome" with respect to this right.  The terms of the Plan – including who is eligible for pension benefits, and how they are to be calculated – do not appear to be written into the cited sections of the charter, ordinances or state statute.
(See Compl ¶¶ 6-9 [Dkt. # 1]; Rocky Hill Code § C9-5, Ex. A to Def.'s Reply Mem. to Plf.'s Obj. to Def.'s Mot. Dismiss [Dkt. # 14]; id. §§ 46-1 & 46-2, Ex. B to Def.'s Reply Mem. [Dkt. # 14]).  These laws do not entitle Ms. Sparveri to have the Town use any

particular hire date in calculating her pension benefits, nor do they set specific criteria for determining who receives benefits.² These facts distinguish the present case from Kapps and Basciano, in which the Second Circuit found that statutes created "fixed eligibility criteria for the receipt of [ ] benefits." Kapps, 404 F.3d at 114 (citing Basciano v. Herkeimer, 605 F.2d 605 (2d Cir. 1978); see also Sanchez, 10 F.Supp.2d (finding property right where federal statute set specific criteria for allowing early withdrawal from deferred compensation plan).  Moreover, unlike the state constitutional provision in Winston, none of the laws cited by Ms Sparveri specifically prohibit the impairment of contractual pension rights.  The Town and state laws grant power and discretion to the Town Manager; they do not cabin this discretion so as to create the property right that Ms. Sparveri claims.

Ms. Sparveri's right to receive pension benefits commensurate with the earlier hire date arises solely from the Town Manager's September 2000 decision to adjust her hire date, the terms of the Plan, and Ms. Sparveri's three years of continued work following the Town Manager's decision.  Even if these facts did give Ms. Sparveri a contractual right to receive benefits commensurate with the 1991 hire date, this is not a constitutionally protected property right.

Constitutionally protected property rights may arise not only from rules, but also from "mutually explicit understandings that support [an individual's] claim of entitlement to the benefit and that he may invoke at a hearing." Perry v. Sinderman, 408 U.S. 593,

---

²The Town Charter does state that the Town is to set up " a system of retirement allowances for the Town's regular, full time, paid employees," but Ms. Sparveri was de facto not a full time and paid employee from 1991 to 1997.

601 (1972) (holding that a teacher working at a state institution with a <u>de facto</u> tenure system, supported by the college's faculty guide and statewide tenure guidelines, had a property interest in continued employment).  However, as both parties have recognized, the Second Circuit has held that "[a] contract dispute . . . does not give rise to a cause of action under section 1983."  <u>Costello v. Town of Fairfield</u>, 811 F.2d 782 (2d Cir. 1987).  In <u>Costello</u>, the court held that retired police officers had no protectible property interest in increased retirement benefits due under a collective bargaining agreement, as distinct from the "basic" benefits to which they were entitled prior to the agreement.  <u>Id</u>.  The following year, the Second Circuit observed that the Supreme Court has generally found property rights where a state revoked a plaintiff's "<u>status</u>, an estate within the public sphere characterized by a quality of either extreme dependence . . . or permanence . . or sometimes both."  <u>S & D Maintenance Co. v. Goldin</u>, 844 F.2d 962, 966 (2d Cir. 1988) (emphasis in original) (holding that parties' contract, by its own terms, did not give the plaintiff even the contractual rights it asserted).  The Second Circuit has recently held that "although a public contract can confer a protectible benefit, not every contract does so, and the type of interest a person has in the enforcement of an ordinary commercial contract often 'is qualitatively different from the interests the Supreme Court has thus far viewed as 'property' entitled to procedural due process protection.'"  <u>Martz v. Incorporated Village of Valley Stream</u>, 22 F.d 26, 30 (2d Cir. 1994) (citing <u>Walentas v. Lipper</u>, 862 F.2d 414, 418 (2d Cir. 1988) and quoting <u>S & D Maintenance Co. v. Goldin</u>, 844 F.2d 962, 966 (2d Cir. 1988)).  <u>Martz</u> involved a dispute over payment for services rendered under a village's contract with an attorney.  The court held that, where state law did not specifically entitle the plaintiff to payment

9

under the contract, the plaintiff had only "an ordinary contract.  The right to payment on such a contract does not rise to the level of a constitutionally protected property interest."  Martz, 22 F.3d at 31.

This court has already found that Ms. Sparveri, like the plaintiffs in Martz and Costello, did not acquire her right to receive a pension calculated to include work from 1991 to 1997 by way of a statutory or regulatory scheme.  Absent any other source for this entitlement, Count I of the complaint "is alleging the breach of an ordinary contract," and not than a deprivation of a constitutionally protected right.  Martz, 22 F.3d at 31.  The court "must bear in mind that the Fourteenth Amendment was not intended to shift the whole of the public law of the states into the federal courts."  Id. (quoting S & D Maintenance, 844 F.2d at 966 (quoting Brown v. Brienen, 722 F.2d 360, 364 (7th Cir. 1983)).  Because Ms. Sparveri has not alleged that the Town deprived her of a constitutional property right, she has not pled a violation of section 1983.

## V.  CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss Count 1 of Ms. Sparveri's complaint is **GRANTED**.

**SO ORDERED.**

    Dated at Bridgeport, Connecticut this 18th day of October, 2005.


                                     /s/ Janet C. Hall
                                     Janet C. Hall
                                     United States District Judge